514

SOUTHERN CONNECTICUT GAS COMPANY *v.* HOUSING
AUTHORITY OF THE CITY OF NEW HAVEN

SOUTHERN CONNECTICUT GAS COMPANY *v.* HOUSING
AUTHORITY OF THE CITY OF NEW HAVEN ET AL.
(9587)
(11838)

PETERS, PARSKEY, SHEA, GRILLO and COVELLO, Js.

Argued October 7—decision released November 29, 1983

*Frank B. Cochran,* for the appellant-appellee (respondent in the first case and named respondent in the second case).

*James E. Rice,* with whom, on the brief, was *David S. Maclay,* for the appellee-appellant (petitioner in both cases).

PETERS, J. These cases involve the scope of rent receiverships statutorily authorized for public service companies that are precluded from terminating utility services to residential dwellings. The petitioner, Southern Connecticut Gas Company (hereinafter gas company), sought appointment of a receiver for the rental income of the respondent, housing authority of New Haven (hereinafter housing authority), alleging that the housing authority was in substantial default of payments due for gas service in designated state and federally financed premises for which the housing authority was the owner, agent, lessor or manager. Despite procedural and substantive objections by the respondent, the trial court found an outstanding indebtedness of $799,387.83, and appointed a receiver pursu-

ant to General Statutes § 16-262f.[1] The respondent promptly appealed from the judgment of the trial court. During the pendency of the appeal from this judgment, its effect was stayed so that the appointed receiver has not yet undertaken his court-ordered responsibilities. Pending resolution of the appeal, the gas company has continued to provide gas service and the housing authority has paid, in part under protest and subject to a claim of refund, the amount of $1,760,000. Relying on those payments, the respondent housing authority thereupon moved the trial court to vacate its judgment and to dismiss the petition for the appointment of a receiver. The trial court granted this motion. Two appeals are currently before us, the respondent's appeal from the appointment of the rent receiver, and the petitioner's appeal from the receivership's termination. We find no error in the first appeal but error in the second appeal.

---

[1] "[General Statutes] Sec. 16-262f. PETITION FOR RECEIVER OF RENTS; HEARING; APPOINTMENT; DUTIES. TERMINATION OF RECEIVERSHIP. NONEXCLUSIVITY OF REMEDY. CONTEMPT. (a) Upon default of the owner, agent, lessor or manager of a residential dwelling who is billed directly by an electric, gas, telephone or water company or by a municipal utility for utility service furnished to such building, such company or municipal utility may petition the superior court or a judge thereof, for appointment of a receiver of the rents or payments for use and occupancy for any dwelling for which the owner, agent, lessor or manager is in default. The court or judge shall forthwith issue an order to show cause why a receiver should not be appointed, which shall be served upon the owner, agent, lessor or manager or his agent in a manner most reasonably calculated to give notice to such owner, agent, lessor or manager as determined by such court or judge, including, but not limited to, a posting of such order on the premises in question. A hearing shall be had on such order no later than seventy-two hours after its issuance or the first court day thereafter. The sole purpose of such a hearing shall be to determine whether there is a sum due and owing between the owner, agent, lessor, or manager and the company or municipal utility. The receiver appointed by the court shall collect all rents or payments for use and occupancy forthcoming from the occupants of the building in question in place of the owner, agent, lessor or manager. The receiver shall pay the petitioner, from such rents or payments for use and occupancy, for electric, gas, telephone or water supplied on and after the

I

The respondent housing authority raises four issues in its appeal. It claims error in the trial court's: (1) denial of its motion to dismiss the petition for receivership; (2) failure to uphold its alleged exemption under General Statutes § 8-65; (3) failure to hold the rent receivership statute, General Statutes § 16-262f, unconstitutional; and (4) limitation of the scope of the rent receivership hearing.

date of his appointment. The owner, agent, lessor or manager shall be liable for such reasonable fees and costs determined by the court to be due the receiver, which fees and costs may be recovered from the rents or payments for use and occupancy under the control of the receiver, provided no such fees or costs shall be recovered until after payment for current electric, gas, telephone and water service has been made. The owner, agent, lessor or manager shall be liable to the petitioner for reasonable attorney's fees and costs incurred by the petitioner, provided no such fees or costs shall be recovered until after payment for current electric, gas, telephone and water service has been made and after payments of reasonable fees and costs to the receiver. Any moneys from rental payments or payments for use and occupancy remaining after payment for current electric, gas, telephone and water service, and after payment for reasonable costs and fees to the receiver, and after payment to petitioner for reasonable attorney's fees and costs, shall be applied to any arrearage found by the court to be due and owing the company or municipal utility from the owner, agent, lessor or manager for service provided such building. Any moneys remaining shall be turned over to the owner, agent, lessor or manager. The court may order an accounting to be made at such times as it determines to be just, reasonable, and necessary.

"(b) Any receivership established pursuant to subsection (a) shall be terminated by the court upon its finding that the arrearage which was the subject of the original petition has been satisfied, or that all occupants have agreed to assume liability in their own names for prospective service supplied by the petitioner, or that the building has been sold and the new owner has assumed liability for prospective service supplied by the petitioner.

"(c) Nothing in this section shall be construed to prevent the petitioner from pursuing any other action or remedy at law or equity that it may have against the owner, agent, lessor or manager.

"(d) Any owner, agent, lessor or manager who collects or attempts to collect any rent or payment for use and occupancy from any occupant of a building subject to an order appointing a receiver shall be found, after due notice and hearing, to be in contempt of court."

The respondent moved the trial court to dismiss the petition for a receivership on the ground that the petitioner had failed to comply with the provisions of Practice Book § 506. That section, which governs the appointment of "a receiver of rents . . . in or ancillary to a civil action," appears to contemplate the initiation of a prior or contemporaneous civil action to which the receivership can relate. The petitioner was alleged to have filed no civil action. Although the petitioner has in fact commenced civil proceedings in the trial court since that time,[2] it contested the motion to dismiss on the basis that the Practice Book section was inapplicable to utility rent receiverships under § 16-262f. The trial court, relying on the holding in *Hartford Electric Light Co.* v. *Tucker,* 35 Conn. Sup. 609, 613–15, 401 A.2d 454 (1978), that such a utility rent receivership proceeding is a special statutory proceeding and not a civil action, denied the motion to dismiss. We agree.

Section 16-262f permits public service companies to petition for a statutory rent receivership under limited circumstances that are statutorily linked to the § 16-262e (a) prohibition on the termination of utility services. Under § 16-262e (a),[3] service may not be terminated: (1) to a residential dwelling; (2) despite nonpayment of a delinquent account; (3) for service billed directly to the residential building's lessor, owner, agent or manager; and (4) when it is impracticable for

---

[2] The gas company filed a separate civil action seeking both monetary damages for the claimed arrearage and a declaratory judgment permitting the termination of gas service to the housing authority in the event that a public utility rent receivership were not granted. Because of the pendency of the public utility rent receivership proceedings and these appeals, the civil action has not proceeded to final judgment. That action is still pending in the Superior Court.

[3] "[General Statutes] Sec. 16-262e. NOTICE FURNISHED TENANTS BY UTILITY RE INTENDED TERMINATION. ASSUMPTION BY TENANTS OF LIABILITY FOR FUTURE SERVICE; DEDUCTION FROM RENT. (a) Notwithstanding the provisions of section 16-262d, wherever an owner, agent, lessor or manager

occupants of the building to receive service in their own name. Unable to terminate service to such a residential dwelling, public service companies are expressly instructed, by § 16-262e (a), to "pursue the remedy provided in section 16-262f." Under § 16-262f, a public service company may seek appointment of a receiver of the rents upon the "default of the owner, agent, lessor or manager of a residential dwelling who is billed directly . . . for utility service furnished to such building . . . ." The section requires an immediate judicial order "to show cause why a receiver should not be appointed," and a prompt hearing, whose "sole purpose . . . shall be to determine whether there is a sum due and owing between the owner, agent, lessor, or manager and the . . . utility." The summary rent receivership proceedings authorized by § 16-262f constitute, as we have previously recognized, a statutory tradeoff for the requirement of continued service imposed by § 16-262e (a). *Hartford Electric Light Co.* v. *Tucker,* 183 Conn. 85, 94, 438 A.2d 828, cert. denied, 454 U.S. 837,

of a residential dwelling is billed directly by an electric, gas, telephone or water public service company or by a municipal utility for utility service furnished to such building not occupied exclusively by such owner, agent, lessor, or manager, and such company or municipal utility has actual or constructive knowledge that the occupants of such dwelling are not the persons to whom the company or municipal utility usually sends its bills, such company or municipal utility shall not terminate such service for nonpayment of a delinquent account owed to such company or municipal utility by such owner, agent, lessor or manager unless: (1) Such company or municipal utility makes a good faith effort to notify the occupants of such building of the proposed termination by the means most practicable under the circumstances and best designed to provide actual notice; and (2) such company or municipal utility provides an opportunity, where practicable, for such occupants to receive service in their own names without any liability for the amount due while service was billed directly to the lessor, owner, agent or manager and without the necessity for a security deposit; provided, if it is not practicable for such occupants to receive service in their own names, the company or municipal utility shall not terminate service to such residential dwelling but may pursue the remedy provided in section 16-262f. . . ."

102 S. Ct. 143, 70 L. Ed. 2d 118 (1981). Because these statutory proceedings are sui generis, they do not require the filing of a companion civil action, and the respondent's motion to dismiss was properly denied.

The respondent's second claim of error maintains that a public housing authority is afforded immunity from the rent receivership provisions of § 16-262f by virtue of the exemption provision of § 8-65 of the General Statutes. Under that section, "[a]ll real and personal property . . . of a housing authority shall be exempt from . . . execution . . . or other judicial process . . . provided the provisions of this section shall not apply to or limit . . . the right of obligees to pursue any remedies for the enforcement of any pledge or lien given by a housing authority on its rents . . . ." The trial court found this claim to be unpersuasive because it concluded that the word "lien" should be read to include involuntary as well as voluntary liens. On such a reading of "lien," a rent receivership could be encompassed within the proviso of § 8-65, and the two statutes would not be in conflict. Although we disagree with this reasoning, we find the respondent's claim unsustainable on other grounds.

The precise ambit of the provisions of § 8-65 need not be determined today. For present purposes, it suffices to note that its language appears to address directly only two types of liens: judicial liens, which are forbidden, and consensual liens, which are permitted. We are concerned, in this case, with a receivership which, if it were to be considered a lien at all, would be a statutory lien. The receivership authorized by § 16-262f does not result in the issuance of "execution or other judicial process," nor does it arise out of a "pledge or lien given by a housing authority."

The statutory problem confronting us can be summarized as follows. Section 8-65, which specifically establishes the immunity of public housing authorities, makes no provision for any kind of statutory liens, including statutory rent receiverships. Section 16-262f, which specifically establishes a right to a utility rent receivership, makes no distinction between private and public ownership of residential dwellings,[4] and hence makes no specific provision for public housing authorities. We believe that this statutory standoff is best resolved on the basis that § 16-262f, because it was enacted in 1975, must prevail over § 8-65, which was enacted in 1939. It is a well established principle of statutory construction that later enactments by the General Assembly are presumed to repeal earlier inconsistent ones to the extent that they are in conflict. *Beccia* v. *Waterbury*, 185 Conn. 445, 458, 441 A.2d 131 (1981); *C. White & Son, Inc.* v. *Rocky Hill*, 181 Conn. 114, 123, 434 A.2d 949 (1980); *Pizzola* v. *Planning & Zoning Commission*, 167 Conn. 202, 206, 355 A.2d 21 (1974). Furthermore, a later enactment will have this effect without regard to the characterization of either act as general or specific in its effect. *Beccia* v. *Waterbury*, supra. Although repeal by implication is generally disfavored, this route is incumbent upon us when, as in this case, the two relevant statutes cannot stand together. See *State* v. *Carbone*, 172 Conn. 242, 256, 374 A.2d 215, cert. denied, 431

---

[4] The legislative history of the enactment of Public Acts 1975, No. 75-625, which has been codified as General Statutes § 16-262f, indicates that the primary concern of the legislature was to protect tenants from termination of their utilities resulting from the nonpayment of utility bills by their landlords. 18 H. R. Proc., Pt. 9, 1975 Sess., pp. 4336, 4349-51, 4367. Although the legislature was asked to consider excluding municipal utilities from the statute, it did not address exclusion of municipal landlords. 18 S. Proc., Pt. 7, 1975 Sess., pp. 3237-43.

U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977). The respondent housing authority therefore cannot prevail on this claim of error.

The respondent's third and fourth claims of error relate to that provision of § 16-262f which limits the scope of the judicial hearing on the application for a rent receivership. Under § 16-262f (a), the court is authorized to hold a hearing no later than seventy-two hours after the issuance of a show cause order relating to the receivership. "The sole purpose of such a hearing," according to the statute, "shall be to determine whether there is a sum due and owing between the owner, agent, lessor, or manager and the company or municipal utility." In its third claim of error, the respondent challenges the constitutionality of so limited a hearing, and in its fourth claim of error it challenges the propriety of evidentiary rulings grounded in the limitations statutorily imposed on the hearing. We find neither of these claims persuasive.

The respondent's constitutional attack on § 16-262f argues that it is impermissible under the due process clauses of the state and federal constitutions; Conn. Const., art. I § 10; U.S. Const., amend. XIV; to restrict the issues that can be heard on a receivership petition. The respondent makes this argument both on its own behalf and on behalf of other creditors who are alleged to have superior claims to the housing authority's rent receipts. As to the latter, the respondent has failed to demonstrate how alleged invasion of the rights of others gives rise to a constitutional claim that this respondent may pursue. We have uniformly resisted the efforts of litigants to assert constitutional claims of others not in a direct adversarial posture before the court. See *General Electric Supply Co.* v. *Southern New England Telephone Co.*, 185 Conn. 583, 593–600, 441 A.2d 581 (1981); *Hardware Mutual Casualty*

*Co.* v. *Premo,* 153 Conn. 465, 470–71, 217 A.2d 698 (1966). As to the former, we agree with the holding in *Hartford Electric Light Co.* v. *Tucker,* 35 Conn. Sup. 609, 613, 401 A.2d 454 (1978), that the legislature may constitutionally provide for a receivership proceeding that is "short, concise, peremptory and immediate." The defenses that the respondent may raise under this statute are no more limited than those available in the statutory summary eviction proceedings which the Supreme Court of the United States found to comport with the requirements of due process in *Lindsey* v. *Normet,* 405 U.S. 56, 64–69, 92 S. Ct. 862, 31 L. Ed. 2d 36 (1971). Our constitution, in the circumstances of this case, requires no more.

The respondent's evidentiary claims largely fall by the wayside once we uphold the limited scope of the statutory proceedings.[5] The trial court was clearly correct in refusing to admit proffered evidence on the practical effect of a rent receivership and on possible federal preemptive rights. The respondent's claim that some of the properties in question did not qualify for a rent receivership because the "leased building program" did not make the housing authority the "owner, manager, operator or agent of said premises" might have warranted trial court inquiry to see whether the statute was applicable at all. That claim has, however, become moot by the fact that it relates to federal housing projects which have fully settled their disputes with the petitioner.[6]

---

[5] We note that full-fledged review of the evidentiary claims is foreclosed by the respondent's failure in its brief to comply with the requirements of Practice Book § 3060F (c) (3) requiring the brief to set out "the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; the ruling; and any exception." The respondent's generalized statement of its claims does not suffice, even as a narrative statement, since it fails to contain the information that the rule requires the brief to state.

[6] The controversy between the parties is now confined to state-subsidized projects, the receivership having been vacated with respect to the federal projects at the end of 1979.

We therefore conclude that the trial court was correct in appointing a rent receiver, in accordance with the requirements of § 16-262f, once it found the respondent housing authority to be substantially indebted to the petitioner. There is no error in appeal No. 9587, the respondent's appeal.

## II

The second appeal in this case is an appeal by the petitioner gas company from a judgment terminating the rent receivership because of substantial payments by the respondent housing authority to the petitioner subsequent to the original order for the appointment of a rent receiver. The trial court concluded that termination of the receivership, which had in fact never been formally implemented, was required by the terms of § 16-262f (b) "because the original arrearage has been paid." On this basis, the trial court found it unnecessary to address issues before it relating to late charges, interest, and accord and satisfaction. We disagree that it was proper to terminate the receivership without first resolving the questions raised by the parties concerning the proper allocation of the various moneys paid to the petitioner during the pendency of the appeal from the appointment of the receiver. The issues will have to be resolved at a new trial.

The termination hearing proceeded in accordance with a stipulation of facts that established the following. Of the amount of $799,387.83 found to have been due and owing as an arrearage at the time of the original receivership proceedings, $531,413.75 was attributable to the state-financed projects still subject to the rent receivership at the time of the termination hearing. In its calculation of the amount originally due and owing, the court had included both amounts for gas supplied and for "late charges," so that it was inaccurate

originally to have characterized the designated amount as consisting entirely of an "arrearage." The parties were in disagreement about the proper allocation of moneys paid to the petitioner after the receivership had been ordered. The respondent tendered its payments for attribution to current charges and to certain designated arrearages, while the petitioner applied the payments first to late charges, then to the oldest previous balance and only lastly to current gas charges. This disagreement about allocation of particular payments mirrored a general disagreement about the liability of the respondent housing authority to pay late charges or interest. During the relevant period, the respondent housing authority has paid approximately $1,760,000 to the petitioner, in part under protest. With respect to the two projects, Brookside and McConaughty, for which the petitioner claims that there were still sums due and owing at the time of the termination hearing, the petitioner has billed the respondent about $1,080,000 for gas delivered and about $230,000 for late charges; on those accounts, $84,000 was still due and owing.

In determining that these facts warranted termination of the receivership, the trial court focused on the language of § 16-262f (b) that "[a]ny receivership established pursuant to [§ 16-262f (a)] shall be terminated by the court upon its finding that the arrearage which was the subject of the original petition has been satisfied . . . ."[7] Comparing $1,760,000, the amount paid to the gas company, with the amount of approximately $531,000 originally due and owing that was attributable to the state-financed projects still subject to the receivership, the court concluded that the statutory criterion had been met. On this reading of the

---

[7] For the full text of General Statutes § 16-262f, including subsections (a) and (b), see footnote 1, supra.

statute, it was, in the view of the trial court, unnecessary to determine the disputed issues of the gas company's entitlement to late charges, interest, or attorney's fees. Because we disagree with the trial court's construction of § 16-262f (b), we find it necessary to order a new trial for the resolution of the various points of contention between the parties.

The reference in § 16-262f (b) to "the arrearage which . . . has been satisfied" cannot be read in isolation from the provisions in § 16-262f (a) that specify the allocation of receivership collections. Although the receivership in this case was never in fact implemented, the trial court, with the consent of the parties, treated the motion for termination as if the appointed receiver had undertaken to collect rental payments during the time that the receivership was in dispute.

Section 16-262f (a) has specific instructions for the allocation of rental payments collected pursuant to a statutory utility rent receivership. The receiver must first pay the petitioning utility company for utility services supplied on and after the date of the receiver's appointment. Thereafter, provision is made for the payment of reasonable fees and costs due the receiver, and then for the payment of reasonable attorney's fees and costs incurred by the petitioner. Only after all these payments have been made are moneys from rentals to be applied to any arrearage found by the court to be due and owing. Although a court is empowered to order an accounting "at such times as it determines to be just, reasonable and necessary,"[8] nothing anywhere in

---

[8] The availability of a judicially supervised accounting meets the requirements of the due process clause, article first, § 10 of the Connecticut constitution and amendment fourteen to the United States constitution. After a default has once been properly established, a statute may constitutionally continue a receivership until all present and past indebtedness related to the receivership has been paid. As we held in *Hartford Electric Light Co.* v. *Tucker*, 183 Conn. 85, 89-90, 438 A.2d 828, cert. denied, 454 U.S.

§ 16-262f authorizes an accounting to depart from the statutory priority which allocates collected rentals to arrearages only after current charges, receivership fees, and attorney's fees have first been paid. In other words, it is impossible to determine whether "the arrearage . . . has been satisfied," in § 16-262f (b), until it is determined what constitutes "payment for current . . . gas . . . service" and "payment . . . for reasonable attorney's fees and costs" in § 16-262f (a).

It is clear from the record that, in this case, there were a number of disputed issues with regard to payments for "current service" and entitlement to attorney's fees. Apart from our conclusion that termination of the receivership was premature until these issues were resolved, we express no opinion on their merits. We have made no determination concerning either the procedural or the substantive soundness of the petitioner's claims that there are still sums due and owing to it. Only a new trial can properly adjudicate these claims and the respondent's defenses thereto.

There is error in appeal No. 11838, the petitioner's appeal. The judgment in that appeal is set aside and the case is remanded for further proceedings in accordance with this opinion. There is no error in appeal No. 9587.

In this opinion the other judges concurred.

---

837, 102 S. Ct. 143, 70 L. Ed. 2d 118 (1981), lesser constitutional safeguards attach to postjudgment than to prejudgment remedies. The respondent is therefore incorrect in his argument that constitutional principles require us to accept the trial court's construction of General Statutes § 16-262f (b).